The Honorable the Judges of the United States Court of Appeals the Fourth Circuit May it please the Court, my name is Mary Vargas and I represent the plaintiff appellant J.D. in this case who just Saturday turned 13 but was 11 years old at the time he was at the Williamsburg venue while he was there on a school field trip because his disability prevented him from eating the food that was being served at the venue despite having been paid full price for him to have a seat at the table. J.D. as a child is speaking to the Court through his father, Commander Brian Dougherty who is present in the gallery today but J.D. is very much my client. He is the driving force behind this case as well as the moral compass. We are here today asking the Court to reverse and remand the decision of the District Court in so far as it required this child to risk his health in order to have an educational experience at Colonial Williamsburg with his peers, side by side with his peers and also to reverse the award of costs against this 13 year old child. Is the testimony of your expert sufficient to cause the District Court to reverse the accommodation issue? I believe that it is your honor but it's not the only evidence that we have to support the necessity of the accommodations that J.D. requires. Well in addition to the expert report we also have the treating specialist for J.D. who is a resident of Hopkins Hospital and he's offered an affidavit. His treating source, Dr. Guario, has indicated that there are a cascading list of very serious and consequential and long term symptoms that result from exposure and even trace amounts to gluten and as a result of that J.D. needs to have a strictly gluten free diet. He didn't testify more than once that anyone else that I recall testified and suggested that he could not eat. He was absolutely prohibited from eating at any commercial establishments. He was not deposed, you're correct. He offered an affidavit and at trial would have offered testimony. That is exactly the issue here. This is what J.D. needed, what was necessary for him in order to have full and equal enjoyment is inherently tied to the nature of his disabilities and the limitations imposed by it. That requires a fact intensive inquiry that should not have been made in the district court. There's a line in the magistrate's decision which the district court adopts where the magistrate set aside the expert report. Colonial Williamsburg did not offer any experts at all to rebut any of plaintiff's testimony. The magistrate simply set aside the expert's report saying none of this is relevant because J.D. would have just been served a simple meal. I paraphrase slightly but the word simple was used. That's a fundamental misunderstanding of the evidence offered in the expert report of he would have been served a meal that had not actually been prepared, a hypothetical meal that after litigation an individual who had very, very limited knowledge of... They're absolutely, absolutely is, your honor. Well, first of all, the FDA has indicated that individuals with severe sensitivities to gluten can react to trace elements as small as .015 milligrams. That's a few grains of sand. Our expert has offered testimony about multiple ways in which this particular kitchen, this particular chef did not have the knowledge or facilities even with the best of intentions to do what this child needed. More importantly, the ADA does not require children to risk their health in order to have inclusion and full and equal experience side by side with their peers. The court... Ms. Marcus, I guess, are you suggesting that in every case, with respect to every child that has an aversion to gluten, or an adult for that matter, I suppose, that there is no accommodation that would be satisfactory in any restaurant that would offer gluten-free... Go ahead. I am absolutely not suggesting that. This is related to that. Isn't it the case that the client has, in fact, had a restaurant that satisfies his needs with respect to this particular condition? He eats at dedicated gluten-free kitchens. So, what is it about this case that makes this restaurant different? The employees testified that this was not a dedicated gluten-free kitchen. ...that had prepared thousands of gluten-free meals without incident. The chef offered an affidavit at summary judgment indicating that he prepared thousands of meals and there had not been a complaint. I don't see that that's relevant to this particular child's unique needs, his individual disability, and what was necessary for him. He has a history of having very severe reactions to exposure that's very trace, as well as a history of reactions in well-respected establishments who have promised his family... He would have had a choice of having a gluten-free meal in the restaurant, or having his own prepared meal right outside of the restaurant. Now, you know, they have the option of doing one or the other. I mean, you know, the act speaks in terms of reasonable accommodations. I mean, you can't just do everything to perfectly suit everybody. And that is what the statute talks in terms of reasonableness. And I don't understand what was unreasonable about Colonial Williamsburg's tavern offering them a gluten-free meal which had been prepared by the chef four or five times a day and offered to innumerable customers without design. As far as the record is concerned, they didn't sign no rules on it. That would require a plaintiff to access all of these individuals who purportedly ate meals post hoc after the litigation, this information was provided, in a self-serving affidavit, and identify what the needs of those individuals were. We don't need to go that far. The ADA looks at the individual needs. We bear the burden of showing what was necessary for this child. We bear the burden of showing that it was reasonable and necessary, yes, Your Honor. But that is an inherently fact-specific inquiry. And I'd like to address an important point that you just raised, which is, what are the implications of this? Do we need to cater to everybody? Do we need to change the service that we provide? That is not what we're here advocating before this Court. One of the things that the tavern does bring up is that there are health considerations here and there are other customers involved. And the health codes of most localities prohibit people coming into restaurants and serving people in restaurants with privately prepared meals. The reason for that is that the restaurant has no control over what the privately prepared meals are like. Kids share food all the time. There's a possibility of food poisoning which the restaurant could be liable. Other customers might not like it, but they might not like the aroma of it. Or they may wonder why somebody is being given a chance to consume their own meal, and they aren't. In other words, aren't you putting the restaurant between a rock and a hard place in terms of the ADA on one hand, and in terms of, if we were to go either way, municipal health codes and sanitation codes on the other? Well, Your Honor, the health codes certainly at issue in this case has authority over what the restaurant serves, not what the customers do. And so the health code... How does the restaurant know whether this food is prepared? There was no notice given to the restaurant that this individual was going to arrive with a privately prepared meal. Maybe something could have been worked out had the restaurant been given some sort of advanced notice. But I understand it wasn't. He just showed up. How can the restaurant be expected to know how the food was prepared, what's in the food, how it would affect other guests? It's just, the situation arrives on the spot. And they're in a hard place because they have obligations above and beyond their own financial model. They have obligations to protect public health.  Your Honor, the health code, as I said, applies to what the restaurant serves. And if your argument was correct that the health code would preclude what my client needed in order to have a full and equal enjoyment of the experience of the tavern, then the evidence in the record that shows Colonial Williamsburg has allowed the exact same meal to be brought by another person would be very surprising. We have testimony in the record that another individual was specifically permitted to bring in a chicken breast, which is exactly what J.D. brought in. And if the restaurant could allow that for somebody else, they could have also allowed it for J.D. And the ADA does not require that people with disabilities, as noted in one of the amicus briefs, does not require that people with disabilities have to give advanced notice. I would add, there's one other critical issue that Harkins... In question, you're saying that this restaurant is not serving and that the only thing that the health code speaks to is actual restaurant service. The restaurant is serving in a way, but it opens itself up and it opens its tables and its services and everything to someone who wishes to come in with a privately prepared meal. I have no doubt, or I suppose as far as this record is concerned, that this was a perfectly healthy meal, but there could be all kinds of things that might pose difficulties and problems for other patrons of the restaurant. I would suggest that all of the issues you raise would go to direct threat, which is an affirmative defense that Colonial Williamsburg has not asserted here. But there's a really important point about this particular venue that we need to address. This is not just a restaurant. This is a 301-acre educational venue. Their promotional materials invite schools to bring children here for the purpose not of eating, but of experiencing life in the colonies. The point of the tavern, as described by Colonial Williamsburg's materials, is to experience what it's like to socialize in colonial times. And offering J.D. the choice of eating a meal that's the equivalent of playing Russian roulette to him with a potential of six months or more of consequences, potential of significant health consequences, or to eat out back is not offering him a like experience. The 8th, the 9th, the 11th circuits, they all dictate that you look at the service that's provided. This wasn't Cracker Barrel. This is an educational venue. This is something that's critically important in our country, that children have access to these kinds of venues. They were paid full price for this child to be in the tavern, and that's what the other children experienced. ...  ... ... ... ... ... ... ... ... ... ... ... ... ...  ... ... ... ... ... ... ... ... ... May I respond? I see that my time has run. ... When Commander Dougherty communicated with the server in the restaurant, he indicated that J.D. had celiac disease, and when he communicated with the manager who came over, he communicated that J.D. was unable to safely eat the food because he couldn't consume gluten even in trace amounts. The ADA does not require in that moment for there to be an exhaustive provision of health records beyond that. What the ADA requires is, having stated his needs and his disability, that the venue allow him to have a like experience to that that was provided to others. And I would submit that requiring an 11-year-old child as a paid guest on a school field trip to go out back in the rain to eat a meal alone while he's crying, that that is not in effect of the Americans with Disabilities Act. ... These are factual issues. Determining what's necessary would require, and what's reasonable, would require exploration of what's been done in the past, weighing of the evidence. There is evidence in the record that Colonial Williamsburg has provided exactly the accommodation that J.D. requested in the past, which would suggest ... With respect to reasonableness, Your Honor, I just think that so much of what you're saying is speculating. We're sort of speculating that the chef might not have prepared a gluten-free meal with the plainest satisfaction, and speculating that there might be other children that were in the same situation. But the point is, the record doesn't contain the kind of hard evidence that the chef was incapable of preparing a gluten-free meal or that the restaurant would have been incapable of handling the child if they'd been given some sort of advance notice or that there were other situations that where the restaurant acted contrary to its own policies. All of that, you say, this could be, this could be, but it's speculation. The record does not place this in genuine dispute in terms of Rule 56. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. My name is Dana Rust with Meguiar Woods here in Richmond on behalf of Colonial Williamsburg. And seated with me at counsel's table are my associates, Ms. Gant and Mr. Schwartz who've helped me ably along the way on this case. Shields Tavern was well prepared for the Doherty's when they arrived on the night of May 11th, 2017. The chef on duty that night graduated from culinary school where he learned how to cook gluten-free meals. He received one-on-one training from the head chef at Colonial Williamsburg on how to prepare gluten-free meals. He was certified by the state of Virginia in Serve Safe training, which includes preparing meals for folks who have dietary restrictions. He follows sort of a strict regimen of cooking protocols for folks who order gluten-free meals. Was the tanner given any notice here of what was going to happen, or who was going to show up, or what the individual's requirements were, or whether the requirements were there any attempt to work with the tavern or the establishment, either through the school or through the parents? There was no notice from the Doherty's that the situation just pops up? That's correct. How is the tavern supposed to know what the food is or how it was prepared or exactly who prepared it or whatever? I mean, it seems to me it might be a very different kind of case if either the parents or the school district had worked with the Shields Tavern and said we have an individual here with special needs and it's a very sensitive situation and we'd like to bring a home prepared meal so that he can eat with his classmates. I'm not unsympathetic to the situation at all. But what I don't understand is just presenting the tavern with a very problematic situation on the spot. The notice here seems to me Notice is important. There was no notice here. Commander Doherty just sat down at his table and then began to unpack a cooler that contained cups, glasses plates and this meal that they brought with them and the wait staff went over to him and said to him, you know, we have a policy against no outside food because of the health code. You're not allowed to do this. He asked to speak to a manager who repeated the same policy. So there are two exceptions to the policy, your honor. Well, one's for babies and toddlers. I'll call that one exception. They can bring in Cheerios, Goldfish, Gerber baby food, that kind of thing. Because they can't order off the menu. They can't buy any food from Colonial Williamsburg. And then there's another exception for cake and wine. They try to get people to buy cake and wine. But if somebody insists somebody calls up and says, you know, we're going to have a birthday party and we want to bring in a cake from our favorite bakery. Or we're going to bring in our own bottle of wine. And it's a special bottle of wine for a special occasion. But when that happens, Colonial Williamsburg charges a fee to plate the cake or a fee to uncork the wine. So they do recover some revenue there. And again, there's no risk of violating the health code that is so important to Colonial Williamsburg. I can't say that to be true, your honor, in every case. But I think in connection with this situation advance notice, as Judge Wilkinson mentioned, would have been extremely helpful because it could have avoided the situation which we lament that the young boy was embarrassed. And there could have been an opportunity to explain to them that we have a safe kitchen. You know, our chef has prepared 5,000 meals without incident. And try to reassure them that they can get a safe gluten-free meal there. And if they insist on not doing that, there would be an easy opportunity to make sure they had a place to go without any sort of uproar or embarrassment to anybody. But I would like to focus on the health code here for a minute because there's one thing that's important I want the court to focus on and a correction I want to make to the record that I think opposing counsel misstated. This is what the health code states. And I'm quoting here. It says, food prepared in a private home shall not be used or offered for human consumption in a food establishment unless the home kitchen is inspected by the Virginia Department of Agriculture. This incident falls squarely under that health code because it was food prepared in a private home and it was used for human consumption in a restaurant. It doesn't matter that we prepared it. It doesn't matter. Because again, the language of the regulation, Your Honor, says food prepared in a private home shall not be used. Our folks in Colonial Williamsburg follow this policy because they're trying to comply with that law. And this court... ... ... ... ... ... ... ... ... ... ... It's our position, Your Honor, that we would not have had to make the modification to abandon our no outside food policy, which is based on four factors, not just the health code. Which is based on four different factors because it wasn't necessary. The reason it's not necessary is because we offered him a gluten free meal too. And all we have to offer is a like experience. So he wants to have a gluten free meal and we're offering a gluten free meal.
judges: J. Harvie Wilkinson III, Albert Diaz, Henry F. Floyd